**In re LIBERTY INSURANCE CORPORATION and Michelle Yaklin, Relators.**

No. 14–10–00229–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 16, 2010.

Rehearing Overruled Sept. 2, 2010.

⚷3(8)

David L. Plaut, Austin, for relators.

Jeffrey L. Raizner, Michael P. Doyle, Houston, for real party in interest.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

On March 15, 2010, Liberty Insurance Corporation and its adjuster, Michelle Yaklin (collectively, "Liberty"), filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex.R.App. P. 52. In the petition, Liberty asks this Court to compel the Honorable Josefina Rendon, presiding judge of the 165th District Court of Harris County, to set aside her February 10, 2010 order denying its plea to the jurisdiction for failure to exhaust administrative remedies, grant the plea to the jurisdiction, and dismiss the case for lack of jurisdiction. We conditionally grant the petition.

### BACKGROUND

On June 18, 2008, Sheila Kennedy suffered injuries when she slipped and fell on vinyl flooring while in the copy room at the Plains Exploration and Production Company where she worked. On July 3, 2008, Liberty accepted as compensable a left shoulder contusion, left arm contusion, neck contusion, lower back contusion, and injuries to the eye socket (bruised), nose (swollen), front teeth, and upper lip. When Liberty accepted those injuries as compensable, Kennedy began receiving chiropractic and other medical treatment.

An MRI was performed on Kennedy's left knee on August 25, 2008. The MRI showed the knee was normal except for an abnormal signal in the posterior horn of the medial meniscus—possibly due to post-operative changes and/or complex tearing, and chondromalacia.

On September 30, 2008, Liberty denied a request for left knee arthroscopy from Kennedy's treating physician, Dr. Robert Fain, M.D.[1] The preauthorization request was denied for the following reasons:

The request for left knee arthroscopy was not approved by peer review as medically necessity could not be established per ODG [Official Disability Guidelines].

Please note that the peer review physician stated that there was no documentation as to whether the MRI findings of the left knee involving the abnormal signal of the medial meniscus was due to post op change versus an acute meniscal tear since there was mention that the patient had previous left knee surgery in 2007.

There did not appear to be any significant positive objective findings on physical exam to justify the need for the surgical intervention and does not meet ODG criteria.

Also, there was no indication as to whether the patient had any previous formal PT or instructions in home exercises.

Thus, the preauthorization request was denied based on medical necessity and compensability, i.e., whether the condition was due to post-operative changes after surgery in 2007 or the June 18, 2008 incident. Neither Dr. Fain nor Kennedy sought reconsideration of the denial of preauthorization for arthroscopic knee surgery.[2]

The DWC received on October 23, 2008 a request for a designated doctor exam.[3]

---

1. *See* 28 Tex. Admin. Code § 134.600(f), (p) (2006).

2. *See* Tex. Admin. Code § 134.600(*o*)(*l*) (providing that either "requestor or employee"

may request reconsideration of a denial of preauthorization "within 15 working days").

3. *See* Tex. Lab.Code Ann. § 408.041(a) (Vernon Supp. 2009) (providing that, at request

The request form does not indicate who requested an examination by a designated doctor. The note to the designated doctor directed the doctor to address only maximum medical improvement, impairment rating, and extent of injury, and ability to return to work. With respect to extent of injury, the note specifically stated that the "claimant slipped & fell on floor landing on left knee & face. Carrier has accepted only a sprain/strain. Carrier is disputing aggravation of pre-existing conditions, extent to left knee, right hip, and back." The DWC sent notice to Kennedy on November 5, 2008 that it had receive a request that a designated doctor be assigned to determine maximum medical improvement, impairment rating, the ability of the employee to return to work, and the extent of the employee's compensable injury. The notice directed Kennedy to attend the examination with the designated doctor, Dr. Jerry Franz, M.D.

On November 21, 2008, Dr. Jerry Franz, M.D. examined Kennedy and issued his designated doctor report on December 23, 2008. Dr. Franz reported that the extent of compensable injury included:

1. Post-concussion, traumatic brain injury.
2. Cervical strain sprain aggravating underlying degenerative disk space narrowing and causing borderline stenosis at C4–C5 and C5–C6.
3. T11–T12 mm disk protrusion.
4. Lumbar strain/sprain aggravating underlying disk pathology from L2 through L5.

5. There is no Lumbar Radiculopathy
6. There is internal derangement of the Left Knee.
7. She has a severe strain/sprain of the Left Ankle.
8. Unrelated mild bilateral carpel tunnel syndrome per electrodiagnostics.

On January 19, 2009, Kennedy received a second opinion from Dr. Gregory P. Harvey, M.D., who declined to recommend arthroscopic knee surgery.[4] In his report, Dr. Harvey stated:

At this point, I think an initial trial of a cortisone injection should be given to see how much pain relief the patient develops. The patient states that she did very well after her prior arthroscopic surgery and that she did not have recurrence of pain until this injury in June. I am having difficulty determining whether the patient's pain is coming from an aggravation of her arthritis or whether she is having significant meniscal symptoms.

The patient may ultimately require arthroscopic surgery both as a diagnostic and therapeutic treatment if she continues to have mechanical symptoms. I have counseled her that since her meniscal symptoms are not clearcut [sic] and she also has severe chondromalacia, that she may not have total relief just from an arthroscopic procedure.

The DWC conducted a benefit review conference on January 28, 2009.[5] Although a benefit review conference may be requested by the claimant, the carrier, or

of insurance carrier or employee, or on commissioner's own order, commissioner may order medical examination to resolve questions about impairment caused by compensable injury; attainment of maximum medical improvement; extent of employee's compensable injury; whether injured employee's disability is direct result of work-related injury; ability of employee to return to work; or similar issues).

4. Dr. Harvey's report states that Kennedy was "referred from Dr. Robert Fain and Liberty

Mutual for evaluation of her left knee." However, Michelle Yaklin states in her affidavit submitted in support of Liberty's plea to jurisdiction that Dr. Fain referred Kennedy to Dr. Harvey with no mention that Liberty also referred her.

5. A benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to (1) explain the rights of the respective parties to a workers' compensation claim and the procedures necessary to protect

the employer, the mandamus record does not contain the request for the benefit review conference or otherwise indicate who requested the conference or identify the disputed issues sought to be resolved by the benefit review conference. The parties were not able to reach an agreement, and the following two issues remained unresolved after the benefit review conference: (1) whether the compensable injury extended to include degenerative disc disease at C4–C5; spondylosis and stenosis at C5–C6 (aggravation); post-concussion, traumatic brain injury; T11–T12 disc protrusion; lumbar disc bulges at L2–L3, L3–L4 and L4–L5(aggravation); Grade I spondylolisthesis at L3–L4 (aggravation); chondromalacia of the left patella; and medial meniscus tear of the left knee; and (2) whether Liberty waived the right to dispute degenerative disc disease at C4–C5; spondylosis and stenosis at C5–C6; traumatic brain injury; disc generation at L3–L4; chondromalacia of the left patella; and medical meniscus tear of the left knee. The DWC scheduled a contested case hearing for April 2, 2009.[6]

On February 4, 2009, Liberty changed its earlier position regarding the compensability of Kennedy's knee injury, now accepting the injury as compensable. Liberty limited its dispute as follows:

The injured employee's compensable injury is limited to cervical sprain/strain, lumbar sprain/strain, chondromalacia or left patella and medial meniscus tear of the left knee. No other condition naturally resulted from or was affected by the original incident. All other injuries, conditions, diagnosis, and/or symptoms related to the injured body part or any other part of the claimant's body are denied as not resulting from the compensable injury or accident. More specifically, the following diagnoses are being disputed: degenerative disc disease at C4/5, spondylosis and stenosis at C5/6, post concussion, traumatic brain injury, T11/12 disc protrusion, Lumbar disc bulges at L2/3, L3/4 and L4/5, Grade I spondylolisthesis at L3/4.[7]

Dr. Fain submitted a second request for preauthorization of arthroscopic surgery on the left knee.[8] On February 19, 2009,

those rights; (2) discuss the facts of the claim, review available information in order to evaluate the claim, and delineate the disputed issues; and (3) mediate and resolve disputed issues by agreement. Tex. Lab.Code Ann. § 410.021 (Vernon 2006). A benefit review conference may be requested by a claimant, a carrier, or an employer who has contested compensability. 28 Tex. Admin. Code § 141.1(a) (1991). The request for a benefit review conference must be made on a specified form and must identify and describe the disputed issues. *Id.* § 141.1(b). On receipt of a request from a party or on its own motion, the DWC may direct the parties to a disputed workers' compensation claim to meet in a benefit review conference to attempt to reach agreement on the disputed issues involved in the claim. Tex. Lab.Code Ann. § 410.023(a) (Vernon 2006). The DWC shall require the party requesting the benefit review conference to provide documentation

of efforts to resolve the disputed issues before the request was submitted. *Id.* § 410.023(b).

6. A benefit review conference is a prerequisite to a contested case hearing. Tex. Lab.Code Ann. § 410.024 (Vernon 2006).

7. "Chondromalacia or left patella and medial meniscus tear of the left knee" were among those disputed conditions that were not resolved by the benefit review conference. In its February 4, 2009 notice of disputed issues, Liberty states that these conditions are included in the compensable injury.

8. "A request for preauthorization for the same health care shall only be resubmitted when the requestor provides objective clinical documentation to support substantial change in the employee's medical condition. The carrier shall review the documentation and determine if a substantial change in the employee's medical condition has occurred." 28 Tex. Admin. Code § 134.600(o)(4).

Liberty approved Dr. Fain's second request for pre-authorization of the left knee arthroscopy "based on a determination that the treatment/service is reasonable and necessary as outlined in the Texas Workers' Compensation Act, Rules and Fee Guidelines." More specifically, according to Michelle Yaklin's affidavit submitted in support of Liberty's plea to the jurisdiction, the second preauthorization request, unlike the first request, documented compliance with relevant Official Disability Guidelines, including a description of the failure of both physical therapies and medication and the required conservative care. On February 24, 2009, Kennedy underwent arthroscopy, medical meniscectomy, and chondroplasty.

The DWC held a contested case hearing on April 2, 2009 on the issues not resolved at the benefit review conference. The DWC issued a decision on April 6, 2009, finding that Kennedy's compensable injury of June 18, 2008 included degenerative disc disease at C4–C5, spondylosis and stenosis at C5–C6, post concussion, traumatic brain injury, T11–T12 disc protrusion, lumbar disc bulges at L2–L3, L3–L4, and L4–L5, grade I spondylolisthesis at L3–L4, chondromalacia of the left patella, and medical meniscus tear of the left knee. The DWC further concluded that Liberty had waived the right to dispute the diagnosis of degenerative disc disease at C4–C5, spondylosis and stenosis at C5–C6, traumatic brain injury, disc degeneration at L3–L4, chondromalacia of the left patella, and medial meniscus tear of the left knee by not contesting timely the diagnoses.[9] The DWC ordered with respect to the payment of benefits:

Carrier is ordered to pay benefits in accordance with this decision, the Texas

Workers' Compensation Act, and the Commissioner's Rules. Accrued but unpaid income benefits, if any, shall be paid in a lump sum together with interest as provided by law.

On August 14, 2009, Kennedy filed the underlying case against Liberty alleging bad faith. Kennedy bases her bad faith claims on Liberty's (1) denial and/or delay of payment of benefits after the DWC had ordered Liberty to pay benefits, and (2) September 30, 2008 denial of the preauthorization request of surgery on Kennedy's left knee. Kennedy alleges "consequential damages to her economic welfare from the wrongful denial and delay of benefits; the mental anguish and physical suffering resulting from this wrongful denial of benefits, and continued impact on the medical evaluation, treatment, and final prognosis; ..." Liberty filed its plea to the jurisdiction on September 29, 2009, contending that Kennedy had not exhausted her administrative remedies with the DWC. The trial court held a hearing on Liberty's plea to the jurisdiction on February 8, 2010, and signed the order denying it on February 10, 2010. In this original proceeding, Liberty contends that the trial court abused its discretion by denying its plea to the jurisdiction.

### STANDARD OF REVIEW

 To be entitled to the extraordinary relief of a writ of mandamus, the relator must show the trial court abused its discretion and there is no adequate remedy by appeal. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex.2010) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a

---

9. Although Liberty stated in the February 4, 2009 notice of disputed issues it accepted as compensable "chondromalacia of the left patella and medial meniscus tear of left knee," those conditions were among those that were at issue at the April 2, 2009 contested case hearing and were found by the DWC to be included in the compensable injury.

clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Columbia Med. Or. of Las Colinas*, 306 S.W.3d 246, 248 (Tex.2010) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., LP.*, 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding) (per curiam). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex.2008) (orig. proceeding). The failure to grant a plea to the jurisdiction for failure to exhaust administrative remedies with the DWC is subject to mandamus review in order to prevent disruption of the orderly processes of government. *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex.2009) (orig. proceeding) (per curiam).

The trial court has jurisdiction to award damages only to the extent that relief is not dependent upon the adjudication, directly or indirectly, of a matter within the DWC's exclusive jurisdiction. *Cunningham Lindsey Claims Mgmt., Inc. v. Snyder*, 291 S.W.3d 472, 477 (Tex.App.-Houston [14th Dist.] 2009, pet. filed). Determining whether an agency has subject matter jurisdiction is treated as a question of law and reviewed de novo. *In re S.W. Bell Tel. Co., LP.*, 235 S.W.3d 619, 625 (Tex.2007) (orig. proceeding). If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust all administrative remedies before a trial court has subject matter jurisdiction. *O'Neal v. Ector County Indep. Sch. Dist.*, 251 S.W.3d 50, 51 (Tex.2008) (per curiam).

A plea to the jurisdiction challenging administrative exhaustion of remedies under the workers' compensation scheme can rest on the pleadings, or on evidence. *Stinson v. Ins. Co. of the State of Pa.*, 286 S.W.3d 77, 83 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (op. on reh'g). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex.2007). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Cameron County v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

### ANALYSIS

The Workers' Compensation Act vests the Workers' Compensation Division with exclusive jurisdiction to determine a claimant's entitlement to medical benefits. *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d at 328. When an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex.2002). The exhaustion requirement ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court addresses those issues. *Stinson*, 286 S.W.3d at 83 (citing *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam)). Kennedy's claims arise from Liberty's September 30, 2008 denial of her request for preauthorization of arthroscopic knee surgery and its February 4, 2009 denial of compensability.

**Exhaustion of Administrative Remedies**

█ Relying on the Texas Supreme Court's decision in *American Motorists Insurance Company v. Fodge*, Kennedy generally asserts that because the DWC determined in its April 6, 2009 decision that she is entitled to benefits, she can proceed with bad faith claims arising from denial of benefits or delay in paying those benefits determined to be due without any further exhaustion of remedies. 63 S.W.3d 801 (Tex.2001). While the carrier in Fodge was ordered to pay temporary income benefits after a contested case hearing, the claimant never sought medical benefits or claimed that she was denied medical benefits. *Id.* at 802. Fodge subsequently sued the carrier for bad faith denial of medical benefits and income benefits. *Id.* at 803. Holding that Fodge was required to exhaust her administrative remedies regarding the denial of medical benefits, the supreme court explained that the trial court could not award damages for denial of benefits without a determination by the Commission that such benefits were due. *Id.* at 804. However, Fodge's claims for income benefits, which were stipulated, were ripe for adjudication and should not have been dismissed. *Id.* at 805.

Kennedy's reliance on *Fodge* is misplaced. While the DWC determined the extent of Kennedy's compensable injury, it did not address Kennedy's entitlement to medical benefits or specific medical treatment. *Cf. Pickett v. Tex. Mut. Ins. Co.*, 239 S.W.3d 826, 831 (Tex.App.-Austin 2007, not pet.) (holding, because benefit dispute agreement determined compensability, but did not address or determine what medical treatments were related to compensable injury, claimant was not relieved of obligation to exhaust administrative remedies regarding disputes over specific medical benefits); *Kelly v. Am. Interstate Ins. Co.*, 14–07–00083–CV, 2008 WL 5085138, at *9 (Tex.App.-Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op.) (holding, because benefit dispute agreement specified nature of injuries and determined they were generally compensable, but did not address medical benefits or specific treatments, claimant did not exhaust administrative remedies when he failed to submit any denied preauthorization requests to agency). The requirement to exhaust administrative remedies applies to disputes as to both compensability or extent of injury and medical necessity or preauthorization. *Snyder*, 291 S.W.3d at 477. Even when the claimant has exhausted his administrative remedies applicable to compensability, dismissal for lack of jurisdiction may be warranted if the claimant failed to exhaust his remedies with regard to medical necessity. *Id.* at 477–78.

Kennedy has not specified what benefits she was entitled to that were denied; neither has she pled that she claimed those benefits related to her injuries. Only the DWC has jurisdiction to determine Kennedy's entitlement to benefits. Without a DWC determination that Kennedy was entitled to any benefits, the trial court cannot award damages for the denial of payment of benefits. *See Fodge*, 63 S.W.3d at 803. Therefore, Kennedy was required to seek a DWC determination that she was entitled to specific benefits. Because Kennedy did not do this, she did not exhaust her administrative remedies regarding the denial of payment of benefits. The result is the same regarding the DWC's finding that Liberty waived its right to contest compensability. The DWC finding of waiver as to compensability is not a determination relating to Kennedy's entitlement to medical benefits. *Cf. Kelly*, 2008 WL 5085138, at *6 (benefit dispute agreement stated that injury was compensable and carrier waived its right to contest compensability of claim, but did not address specific medical treatments or procedures).

Kennedy also did not exhaust administrative remedies with respect to Liberty's September 30, 2008 denial of the preauthorization request for arthroscopic knee surgery. It is not disputed that neither Kennedy nor Dr. Fain asked Liberty to reconsider its September 30, 2008 denial of the preauthorization request. Liberty argues Kennedy's failure to exhaust ended the dispute over the first request for preauthorization because reconsideration is a mandatory prerequisite to continuing the medical dispute resolution process.[10] Instead of seeking reconsideration, Dr. Fain submitted a second preauthorization request for arthroscopic surgery on the left knee. Liberty approved the second preauthorization request, and the arthroscopic knee surgery was performed on February 24, 2009.

Before the trial court can adjudicate a bad faith claim for denial of preauthorization of medical treatment, the DWC must first have determined that the claimant was entitled to the treatment. *Schwartz v. Ins. Co. of State of Pa.*, 274 S.W.3d 270, 275 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). The fact that the carrier approved a subsequent preauthorization request for the same treatment does not relieve the claimant of her obligation to seek a DWC determination of entitlement of treatment in the first denied request. *See Snyder*, 291 S.W.3d at 479 (holding that carrier's approval of second preauthorization request did "not alter the fact that under the governing statutes and ad-

ministrative rules, resolution of any question regarding need for surgery" as to the first preauthorization request "rested solely with the [agency]"); *Schwartz*, 274 S.W.3d at 274–75 (holding that unresolved dispute as to medical necessity of requested surgery still existed when claimant filed suit even though carrier ultimately authorized surgery more than nine months after initial request); *In re Tex. Mut. Ins. Co.*, No. 05–05–00944–CV, 2005 WL 1763562, at *2 (Tex.App.-Dallas July 27, 2005, orig. proceeding) (mem. op.) ("The fact that the discogram and fusion surgery were ultimately authorized does not constitute any type of determination by the Commission that the initial denial of the procedures ... [was] improper.").

However, relying on Section 413.014(f) of the Texas Labor Code, Kennedy contends that she was not required to further exhaust her administrative remedies as to the September 30, 2008 denial of preauthorization because Liberty's subsequent authorization of the same surgery precludes any challenge to medical necessity. *See* Tex. Lab.Code Ann. § 413.014(f) (Vernon 2006) (DWC may not prohibit carrier from voluntarily discussing prospective health care treatment with provider or certifying or agreeing to pay for health care consistent with agreement; carrier is liable for treatment that is voluntarily preauthorized and may not dispute certified or agreed-on preauthorized health care treatment at later date). Section 413.014(f) is not applicable in this case. Under section

---

**10.** "The requestor or employee may within 15 working days of receipt of a written initial denial request the carrier to reconsider the denial and shall document the reconsideration request." Tex. Admin. Code § 134.600(*o*)(*l*). If the carrier denies reconsideration of its initial denial, the requestor "shall file a request for independent review with the insurance carrier (carrier) that actually issued the adverse determination or the carrier's utilization review agent (URA) that

actually issued the adverse determination no later than the 45th calendar day after receipt of the denial of reconsideration." Tex. Admin. Code § 133.308(i) (2008). "The Department may dismiss a request for medical necessity dispute resolution if ... the Department determines that the dispute involving a non-life-threatening condition has not been submitted to the carrier for reconsideration; ..." *Id.* § 133.308(j)(3).

413.014(f), the DWC "cannot prohibit parties from voluntarily agreeing to pay for medical services that would otherwise require preauthorization, and any such agreements create liability for those agreed services on the part of the insurance carrier." *Stinson*, 286 S.W.3d at 86. Here, there was no voluntary agreement by Liberty to pay for the arthroscopic knee surgery request of September 30, 2008. Instead, Liberty approved the second request for preauthorization submitted by Dr. Fain.

Kennedy further contends that a carrier's agreement to provide benefits precludes any exhaustion argument. *See Tex. Mut. Ins., Co. v. Ruttiger*, 265 S.W.3d 651, 658 (Tex.App.-Houston [1st Dist.] 2008, pet. granted) (holding bad faith claims in delaying payment of benefits that carrier had agreed to pay in benefit dispute agreement were ripe and trial court had jurisdiction to hear case); *In re Tex. Workers' Comp. Ins. Fund*, 995 S.W.2d 335, 337 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding [mand. denied]) (holding claimant had exhausted administrative remedies on claim for damages because of carrier's delay in payment of damages it had agreed to pay in benefit dispute agreement). Unlike *Fund* and *Ruttiger*, there is no benefit dispute agreement or any other agreement expressly entitling Kennedy to medical benefits. *See Kelly*, 2008 WL 5085138, at *9 (explaining that relevant benefit dispute agreements in *Fund* and *Ruttiger* expressly created entitlement to medical benefits or treatment).[11] Liberty denied the first preauthorization request based on medical necessity and compensability because there was a question as to the

whether the condition was due to post-operative changes after surgery in 2007. Liberty subsequently changed its position on compensability in its February 4, 2010 notice of disputed issues. However, Liberty's change in position as to the compensability of the knee injury was not an "agreement" that Kennedy was entitled to knee surgery. Compensability and medical necessity are separate inquiries and both require exhaustion of administrative remedies. *See Snyder*, 291 S.W.3d at 477.

We similarly reject Kennedy's reliance on this court's opinion in *Stinson*. In *Stinson*, the Texas Workers' Compensation Commission decided the issue of compensability in favor of Stinson after holding a contested hearing. *Stinson*, 286 S.W.3d at 82. It was undisputed that Stinson had exhausted her administrative remedies with respect to compensability after the Commission's determination of the issue, but the carrier argued that Stinson was required to also exhaust her remedies addressing medical necessity. *Id.* at 86. The carrier contended that Stinson failed to request preauthorization of physical therapy. *Id.* at 86. However, the evidence viewed in the light most favorable to the non-movant was sufficient to raise a fact issue as to whether preauthorization was requested. *Id.* at 89. Because the record contained no evidence of a written denial of preauthorization from the carrier and, absent receipt of a timely written denial of preauthorization, Stinson's deadlines did not begin to run and the provision regarding waiver of the right to independent review or medical dispute resolution was inapplicable. *Id.* at 89–90. Therefore, there were no administrative review

---

11. When the Commission, claimant, and carrier agree on the claimant's entitlement to compensation benefits, their agreement is binding as a final determination that the benefits are owed, precluding the need for the claimant to seek administrative remedies be-

fore she can sue for damages arising from the carrier's unreasonable delay or denial of benefits. *Schwartz*, 274 S.W.3d at 274 (citing Tex. Lab.Code Ann. §§ 410.029, 410.030 (Vernon 2006)).

procedures for Stinson to follow for physical therapy as of July 2004 because her obligations were keyed to receipt of a written preauthorization denial. *Id.* at 90. Furthermore, there was no indication that any dispute remained for administrative resolution with respect to medical necessity when the carrier subsequently assented to the treatment and began paying for it. *Id.* *Stinson* is not applicable here because (1) the receipt of Liberty's September 30, 2008 written denial of Kennedy's preauthorization request triggered her duty to seek reconsideration of that decision; and (2) Liberty did not "assent" to the arthroscopic knee surgery, but approved a second preauthorization request.

Any determination that Liberty's September 30, 2008 denial of Kennedy's preauthorization request for arthroscopic knee surgery was improper must have first been made by the DWC. Because Kennedy never took the first step in exhausting her administrative remedies by seeking reconsideration of Liberty's denial of her first preauthorization request, she never obtained a DWC determination that such denial was improper or that she was entitled to that procedure. *See Snyder,* 291 S.W.3d at 484 ("[T]he question of whether the first preauthorization was wrongfully denied—and hence, whether Snyder was damaged by a wrongful delay—can only be answered by first determining whether spinal surgery was medically necessary [when first requested."). Therefore, the trial court does not have jurisdiction over Kennedy's claims arising from Liberty's September 30, 2008 denial

of preauthorization for arthroscopic knee surgery.[12]

### Impediment to Jurisdiction

If a claim is not within the court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. *Fodge,* 63 S.W.3d at 805. If the impediment to jurisdiction can be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured. *Id.* Here, the jurisdictional impediment cannot be removed because Kennedy never sought a DWC determination that she was entitled to arthroscopic knee surgery or any other benefits. *See Snyder,* 291 S.W.3d at 484 ("As a result of waiver, Snyder has not and cannot exhaust administrative remedies regarding this issue.").

### Conclusion

We hold the trial court abused its discretion in denying Liberty's plea to the jurisdiction for failure to exhaust administrative remedies before the DWC, and Liberty does not have an adequate remedy by appeal. *See In re Liberty Mut. Fire Ins. Co.,* 295 S.W.3d at 328. Accordingly, we conditionally grant Liberty's petition for writ of mandamus and direct the trial court to set aside its February 10, 2010 order denying the plea to the jurisdiction and enter an order granting the plea to the jurisdiction and dismissing the case for lack of jurisdiction. The writ will issue

---

12. At her deposition, Kennedy complained about the following three instance of alleged denial or delay of payment of medical benefits: (1) denial of payment for a "chilling contraption" ordered by Dr. Fain; (2) two-week delay for approval of an MRI; and (3) two and one-half-week delay of approval to see a neurosurgeon. However, Kennedy testified that she did not know if DWC review was sought with regard to these complaints. Kennedy has not complained of these instances in her pleadings or otherwise shown that she obtained any DWC determination with regard to these complaints. *See Fodge,* 63 S.W.3d at 804.

only if the trial court fails to act in accordance with this opinion.