NUMBER 13-11-00198-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

CORPUS CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



IN RE NEW HAMPSHIRE INSURANCE COMPANY, 

CHARTIS CLAIMS, INC., AND STEPHANIE STARK

 

 



On Petition for Writ of Mandamus.

 

 



OPINION

 

Before Justices Garza, Vela, and Perkes

Opinion by
Justice Perkes[1]

By petition for writ of mandamus,
relators, New Hampshire Insurance Company, Chartis Claims, Inc., and Stephanie
Stark,[2]
seek to compel the trial court to withdraw its order denying their motion to
dismiss.  The underlying proceeding is a workers’ compensation bad-faith case
in which the real party in interest, Rosalinda Torres (“Torres”), seeks damages
from New Hampshire for an alleged delay in providing her with workers’
compensation death benefits following the death of her husband, Lazaro Torres. 
New Hampshire moved to dismiss Torres’s claims for lack of subject matter
jurisdiction on grounds that she failed to exhaust her administrative remedies
because she did not secure a formal determination from the Texas Department of
Insurance, Division of Workers’ Compensation (“DWC”) that her claim was
compensable and that death benefits were owed.  The trial court denied the motion
to dismiss and this original proceeding ensued.  We deny the petition for writ
of mandamus.

I.  Standard of
Review

To be entitled to the extraordinary
relief of a writ of mandamus, New Hampshire must show that the trial court
abused its discretion and that there is no adequate remedy by appeal.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig.
proceeding).  A trial court abuses its discretion if it reaches a decision so
arbitrary and unreasonable as to constitute a clear and prejudicial error of
law or if it clearly fails to correctly analyze or apply the law.  In re
Cerberus Capital Mgmt., LP, 164 S.W.3d 379, 382 (Tex. 2005) (per curiam) (orig.
proceeding); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig.
proceeding).  In determining whether appeal is an adequate remedy, we consider
whether the benefits outweigh the detriments of mandamus review.  In re BP
Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  

The failure to grant a plea to the
jurisdiction for failure to exhaust administrative remedies with the DWC is
subject to mandamus review in order to prevent a “disruption of the orderly
processes of government.”  In re Liberty Mut. Fire Ins. Co., 295 S.W.3d
327, 328 (Tex. 2009) (orig. proceeding); see In re Tex. Mut. Ins. Co.,
321 S.W.3d 655, 660 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding)
(same); see also In re Entergy, 142 S.W.3d 316, 321 (Tex. 2004) (orig.
proceeding) (“In short, if the PUC has exclusive jurisdiction in this dispute,
the judicial appropriation of state agency authority would be a clear
disruption of the ‘orderly processes of government.’  This disruption, coupled
with the hardship imposed on Entergy by a postponed appellate review, warrants
an exception to our general proscription against using mandamus to correct
incidental trial court rulings.”).

II.  Background

Lazaro Torres lived in Texas and
worked for Willbros Construction (U.S.), L.L.C. (“Willbros”).  In January of
2009, Willbros sent Lazaro Torres to work temporarily at a construction site in
Nebraska.  He lived in a rented trailer in Crete, Nebraska, with co-workers. 
On January 24, 2009, Lazaro Torres and a co-worker died in their trailer as a
result of carbon monoxide poisoning.  

On May 29, 2009, New Hampshire
informed Willbros that it had received a workers’ compensation claim concerning
Lazaro Torres’s death.  On June 12, 2009, Torres filed a claim for death
benefits with the DWC.[3] 
On August 12, 2009, the DWC sent a formal “Notice to Carrier of Injury” to New
Hampshire, requesting that New Hampshire submit the first report of injury to
the DWC electronically.  Despite a specific statutory directive requiring New
Hampshire to respond to the claim within a set period of time, New Hampshire
did not respond.  See Tex. Lab.
Code Ann. § 409.021(a) (West 2006).

On March 2, 2010, Torres requested
a benefit review conference before the DWC.  At a conference held on April 20,
2010, she contended that New Hampshire had waived its right to contest
compensability because it had not notified the DWC that it contested
compensability.  The conference was recessed at New Hampshire’s request.  The conference
was not reconvened.  According to New Hampshire, following this benefit review
conference, New Hampshire agreed to accept Torres’s claim as compensable.  

On July 6, 2010, the DWC ordered
New Hampshire to pay attorney’s fees to Torres’s counsel out of her share of
the death benefits.  On July 12, 2010, New Hampshire sent Torres a “Notification
of First Death Benefit Payment” whereby it paid her $57,750, representing weekly
payments of $750 from January 25, 2009, through July 17, 2010, less attorney’s
fees.  On July 12, 2010, New Hampshire notified the DWC that it had begun to
pay death benefits to Torres.  

On August 10, 2010, Torres filed
suit against New Hampshire in the 206th District Court of Hidalgo County alleging
causes of action for, inter alia, bad faith, conspiracy, and unfair settlement
practices.  After filing its original answer, New Hampshire filed a “Motion to
Dismiss Certain Claims Based on Lack of Subject Matter Jurisdiction or, in the Alternative,
Motion to Stay Proceedings.”  The gravamen of the motion was that the trial
court lacked subject matter jurisdiction because the DWC had not made a
determination regarding Torres’s entitlement to workers’ compensation
benefits.  A hearing was held and the trial court subsequently denied New
Hampshire’s motion to dismiss.  This original proceeding ensued.  

New Hampshire presents two issues
for our review:  (1) the trial court abused its discretion “in denying New
Hampshire’s motion to dismiss Torres’s bad faith suit for lack of subject
matter jurisdiction” because the DWC “has made no determination that Torres’s death
benefit claim is compensable or that benefits are owed,” which is a
prerequisite for civil court jurisdiction; and (2) the trial court’s erroneous
denial of the motion to dismiss is correctable by mandamus.  As stated
previously, an erroneous denial of a motion to dismiss is correctable by
mandamus.  See In re Liberty Mut. Fire Ins. Co., 295 S.W.3d at 328. 
Accordingly, we sustain New Hampshire’s second issue, and proceed to address
the merits of its first issue.

III.  Jurisdiction

A plea to the jurisdiction contests
a trial court’s subject matter jurisdiction.  Tex. Dep’t of Parks and
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Cameron County v.
Ortega, 291 S.W.3d 495, 497 (Tex. App.—Corpus Christi 2009, no pet.).  The
purpose of a plea to the jurisdiction “is not to force the plaintiffs to
preview their case on the merits, but to establish a reason why the merits of
the plaintiffs’ claims should never be reached.”  Bland Indep. Sch. Dist. v.
Blue, 34 S.W.3d 547, 554 (Tex. 2000).  Subject matter jurisdiction is a
question of law; therefore, we review the trial court’s ruling on a plea to the
jurisdiction de novo.  See Miranda, 133 S.W.3d at 228 (Tex. 2004); Ortega,
291 S.W.3d at 497. 

In reviewing a plea to
jurisdiction, we must look to the allegations in the pleadings, construe them
in the plaintiff’s favor, and look to the pleader’s intent.  See County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  We consider the facts
alleged in the petition, and to the extent relevant to the jurisdictional
issue, any evidence submitted by the parties to the trial court.  Blue,
34 S.W.3d at 555.  The plaintiff bears the burden to allege facts affirmatively
demonstrating the trial court’s jurisdiction to hear a case.  Tex. Dep’t of
Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002); State of Tex. Parks
& Wildlife Dep’t. v. Morris, 129 S.W.3d 804, 807 (Tex. App.—Corpus
Christi 2004, no pet.).  If a plaintiff pleads facts that affirmatively
demonstrate an absence of jurisdiction and the defect is incurable, then the
cause is properly dismissed.  Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804–05
(Tex. 1989).  However, when the plaintiff fails to plead facts that establish
jurisdiction, but the petition does not affirmatively demonstrate incurable
defects in jurisdiction, the issue is one of pleading sufficiency, and the
plaintiff should be afforded the opportunity to amend.  Brown, 80 S.W.3d
at 555; Ramirez, 74 S.W.3d at 867; Roskey v. Cont’l Cas. Co., 190
S.W.3d 875, 879, 881 (Tex. App.—Dallas 2006, pet. denied) (affirming order of
dismissal where plaintiff was given opportunity to amend but failed to do so in
a timely manner).

The Texas Workers’ Compensation Act
vests the DWC with exclusive jurisdiction to determine a claimant’s entitlement
to medical and income benefits.  See Tex.
Lab. Code Ann. § 413.031 (West Supp. 2010); In re Liberty Mut. Fire
Ins. Co., 295 S.W.3d at 328.  If an agency has exclusive jurisdiction, a
claimant must exhaust all administrative remedies in the agency before filing a
claim in the trial court.  See In re Entergy, 142 S.W.3d at 321; In
re Tex. Mut. Ins. Co., 333 S.W.3d 925, 929 (Tex. App.—Waco 2011, orig.
proceeding) (holding that the trial court has jurisdiction to award damages
only to the extent that relief is not dependent upon the direct or indirect
adjudication of a matter within the DWC's exclusive jurisdiction).  “Until the
party has exhausted all administrative remedies, the trial court lacks subject
matter jurisdiction and must dismiss any claim within the agency’s exclusive
jurisdiction.”  In re Entergy, 142 S.W.3d at 321–22.  The exhaustion
requirement ensures that the administrative agency has the opportunity to
resolve disputed fact issues within its exclusive jurisdiction before a court
must address those issues.  See Essenburg v. Dallas County, 988 S.W.2d
188, 189 (Tex. 1998) (per curiam); Stinson v. Ins. Co. of the State of Pa.,
286 S.W.3d 77, 84 (Tex. App.—Houston [14th Dist.] 2009, pet. denied.); Haddix
v. Am. Zurich Ins. Co., 253 S.W.3d 339, 348 (Tex. App.—Eastland 2008, no
pet.).

New Hampshire’s argument is
premised on the Texas Supreme Court’s decision in American Motorists
Insurance Company v. Fodge, 63 S.W.3d 801 (Tex. 1996).  In Fodge,
the supreme court considered “whether a compensation claimant can prosecute a
lawsuit against a carrier to recover benefits and damages resulting from a
denial of benefits without a prior determination by the Texas Workers’
Compensation Commission that benefits are due her.”  Id. at 802.  The Fodge
court held that a claimant cannot recover damages for the carrier’s breach of
its duty of good faith in connection with payment of medical expenses if the
claimant was not entitled to medical treatment.  Id. at 804.  The Texas
Supreme Court explained: 

Because only the Commission can
determine a claimant’s entitlement to compensation benefits, it follows, as we
reasoned in Saenz, that “allowing courts to award damages for wrongful
deprivation of benefits would circumvent the Commission’s jurisdiction” and
therefore could not be permitted.  Thus, just as a court cannot award
compensation benefits, except on appeal from a Commission ruling, neither can
it award damages for a denial in payment of compensation benefits without a
determination by the Commission that such benefits were due.  Accordingly,
Fodge could not recover damages for American Motorists’ breach of its duty of
good faith to pay her medical expenses if she was not entitled to medical
treatment.  The court could not adjudicate her damages claim without
determining her entitlement to medical treatment, a matter within the
Commission’s exclusive jurisdiction.  Her claim for damages from denied medical
treatment is made no more viable simply by restating it under the other legal
theories she asserted—negligence, fraud, and statutory violations.  To award
damages equal to the cost of denied medical care is tantamount to ordering that
the care be paid for and would, as we said in Saenz, circumvent the
Commission’s exclusive authority to decide that issue.  The same is true for
Fodge’s other claims for damages based on a denial of benefits.

 

Id. (citing Saenz
v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 612 (Tex. 1996)).  In
2009, the Texas Supreme Court examined Fodge and reapplied the principles
announced in that case.  See In re Liberty Mut. Fire Ins. Co., 295
S.W.3d at 328 (orig. proceeding) (holding that claimant who exhausted
administrative remedies as to income benefits was still required to pursue
administrative remedies regarding denial of medical care).

Under Fodge and its progeny,
a trial court may not consider a claim for relief if it is dependent, either
directly or indirectly, upon the resolution of a matter within the DWC’s exclusive
jurisdiction.  Cunningham Lindsey Claims Mgmt., Inc. v. Snyder, 291
S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet. filed).  The
application of the exhaustion doctrine has been extensively explored.  See,
e.g., In re Liberty Ins. Corp., 321 S.W.3d 630, 637 (Tex. App.—Houston
[14th Dist.] 2010, orig. proceeding) (applying the exhaustion doctrine to
disputes regarding compensability, the extent of injury, medical necessity, and
delay in reimbursing medical expenses or delay in the preauthorization of
medical care); see also Stinson, 286 S.W.3d at 84-85; Bestor v.
Service Lloyds Ins. Co., 276 S.W.3d 549, 554 (Tex. App.—Waco 2008, no
pet.); Schwartz v. Ins. Co. of the State of Pa., 274 S.W.3d 270, 275
(Tex. App.—2008, pet. filed); Pickett v. Tex. Mut. Ins. Co., 239 S.W.3d
826, 836 (Tex. App.—Austin 2007, no pet.); In re Tex. Mut. Ins. Co., 157
S.W.3d 75, 80–81 (Tex. App.—Austin 2004, orig. proceeding); Malish v. Pac.
Employers Ins. Co., 106 S.W.3d 744, 746–47 (Tex. App.—Fort Worth 2003, no
pet.).  Thus, even when the claimant has exhausted his administrative remedies with
regard to one claim or issue, dismissal for lack of jurisdiction may still be
warranted if the claimant failed to exhaust his administrative remedies with
regard to a different claim or issue.  See Snyder, 291 S.W.3d at 477–78. 


In Pickett, for instance, although
the parties entered into a benefit dispute agreement to determine which of the
claimant’s disorders were causally related to a compensable injury, the court found
that the agreement did not determine “what treatments would be medically
necessary and reasonable for those conditions” and the carrier “remained
responsible for reviewing [the claimant’s] submitted medical bills and
preauthorization requests to determine whether a medical treatment related to
her compensable injuries or her non-compensable injuries.”  Id. at 831.  The
court concluded that the agreement “did not resolve any issues concerning [the
claimant’s] entitlement to medical benefits,” and, thus, the claimant was
required to exhaust administrative remedies and obtain a favorable
determination from the DWC before proceeding to court.  Id. at 837. 

New Hampshire contends the trial
court “clearly abused its discretion in denying New Hampshire’s motion to
dismiss [Torres’s] extra-contractual claims seeking damages allegedly resulting
from a delay in initiating workers’ compensation death benefits.”  New
Hampshire asserts that because Torres failed to obtain a formal determination from
the DWC that her claim is “compensable and that benefits are owed,” the trial
court “has no jurisdiction to entertain bad faith or other extra-contractual
claims based on the alleged untimely payments of those benefits.”  In response,
Torres contends:  (1) the exhaustion of administrative remedies did not require
a contested case hearing “when there no longer was a case to contest”; (2) the
futility exception to the exhaustion of administrative remedies applies in this
case; and (3) the completion of a form by New Hampshire and approved by the DWC
identifying Torres as an eligible beneficiary to receive death benefits is equivalent
to an administrative determination under the facts of this case and estops New
Hampshire from contending otherwise.  

In order to resolve New Hampshire’s
argument, we must turn to the structure of the administrative process
delineated by the workers’ compensation act.  The Texas Workers’ Compensation
Act provides a four-tiered system for the disposition of claims by the DWC.  See
Tex. Lab. Code Ann. §§ 410.021–.308
(West 2006 & Supp. 2010); In re Tex. Mut. Ins. Co., 329 S.W.3d 1,
5–6 (Tex. App.—San Antonio 2009, orig. proceeding); Stinson, 286 S.W.3d
at 84.  In the first tier, the parties participate in a “benefit review
conference” conducted by a “benefit review officer.”  Tex. Lab. Code Ann. §§ 410.021–.034 (West 2006 & Supp.
2010). The conference, which is a “nonadversarial, informal dispute resolution
proceeding,” is designed to inform the parties regarding the procedures
regarding a claim, discuss the facts and issues pertaining to the claim, and “mediate
and resolve disputed issues by agreement of the parties.”  Id. §
410.021(3) (West 2006).  “A dispute may be resolved either in whole or in part
at a benefit review conference.”  Id. § 410.029(a) (West 2006).  If the
conference results in the resolution of disputed issues or in a settlement, the
benefit review officer reduces the agreement to writing and the parties and the
officer sign the agreement.  Id. § 410.029(b) (West 2006).  If the
parties fail to resolve all parts of a dispute at the benefit review
conference, the benefit review officer similarly prepares a written report that
delineates the status of the case.  Id. § 410.031 (West 2006).  

In the second tier, “[i]f issues
remain unresolved after a benefit review conference,” the parties may agree to
arbitrate, and absent such an agreement, the parties may seek relief at a “contested
case” hearing.  Id. §§ 410.104, 410.151–.169 (West 2006).  In the third
tier, a party may seek review by an administrative appeals panel.  Id.
§§ 410.201–.208 (West 2006).  Finally, in the fourth tier, a party that has
exhausted its administrative remedies may seek judicial review.  Id. §§
410.251–.308 (West 2006). 

New Hampshire contends that Torres
failed to exhaust her administrative remedies because she failed to complete
the first “tier” in the administrative process for the adjudication of
disputes.  According to New Hampshire, the parties attended two benefit review
conferences, but did not complete this process because they did not enter into
a written benefit dispute agreement nor did the benefit review officer prepare
a written report of the outstanding unresolved issues.  Instead, New Hampshire “simply
agreed to accept compensability of Torres’s claim and began paying her death
benefits, which she accepted.”  According to New Hampshire, “the DWC never made
any determination that Torres’s death benefit claim is compensable or that New
Hampshire owed her workers’ compensation benefits.”

We reject New Hampshire’s argument. 
The Texas Workers’ Compensation Act does not “require a claimant to continue
through all four tiers of the disposition process if the parties agree on the
claimant’s compensation benefits at an earlier stage in the process.”  In re
Tex. Mut. Ins. Co., 329 S.W.3d 1, 5-6 (Tex. App.—San Antonio 2009, orig.
proceeding) (quoting In re Tex. Workers’ Comp. Ins. Fund, 995 S.W.2d
335, 337 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding [mand. denied]);
see Stinson, 286 S.W.3d at 91; see also Kelly v. Am. Interstate Ins.
Co., No. 14-07-000083-CV, 2008 Tex. App. LEXIS 8987, at *13 (Tex. App.—Houston
[14th Dist.] Nov. 25, 2008, pet. filed).  As stated by the Texas Supreme Court,
if a dispute exists or arises between the parties, then resolution must first
be sought from the DWC; however, “the Act does not require a claimant to seek
review of issues not in dispute.”  Tex. Mut. Ins. Co. v. Ruttiger, No.
08-0751, 2011 Tex. LEXIS 600, at *17 (Tex. Aug. 26, 2011).[4]

In the instant case, New Hampshire
agreed to pay death benefits.  In its own words, it “agreed to accept
compensability of Torres’s claim.”  The exhaustion of remedies doctrine did not
require Torres to needlessly pursue administrative remedies after the parties
no longer had any disputed issues.  When the DWC, a claimant, and the insurance
carrier agree on the claimant’s entitlement to compensation benefits, their
agreement is binding as a final determination that the benefits are owed,
precluding the need for the claimant to seek administrative remedies before she
can sue for damages arising from the carrier's unreasonable delay or denial of
benefits.  See Tex. Mut. Ins. Co., 2011 Tex. LEXIS 600, at *17; In re
Liberty Ins. Corp., 321 S.W.3d at 639, n.11; Schwartz, 274 S.W.3d at
274.

            Moreover,
the entitlement to benefits can be shown by agreement between the carrier and
the claimant.  See Tex. Mut. Ins. Co., 2011 Tex. App. LEXIS 600, at *15;
In re Tex. Mut. Ins. Co., 321 S.W.3d at 664.  In the instant case, New
Hampshire filed an “Application for Division Approval of Change in Payment
Period and/or Purchase of an Annuity for Death Benefits.”  Pursuant to this
application, New Hampshire sought to purchase an annuity and to change the
timing of payments to Torres.  The information sheet regarding this transaction,
DWC Form-31, states that:

Upon the request of an
eligible beneficiary entitled to death benefits the insurance carrier and
eligible beneficiary may agree to change the frequency of death benefits
payments from the standard weekly period to a monthly period.  The Division
must approve the application to change the frequency of death benefits
payments.

 

. . . . 

 

An eligible beneficiary
entitled to death benefits and the insurance carrier may enter into a written
agreement for the purchase of an annuity to pay death benefits.  All
applications must be submitted to the Division for approval.  

 

The application was
signed by Torres, New Hampshire, and a representative from the DWC.  This form authorized
New Hampshire to purchase an annuity providing monthly, rather than weekly,
death benefit payments to Torres.  There is no suggestion in the record that any
dispute remained regarding what specific benefits Torres was entitled to
recover following the parties’ entry into the agreement to purchase an annuity
with monthly payments.  In fact, New Hampshire states in its petition that
after “attending the April 2010 Benefit Conferences, New Hampshire agreed to
accept Torres’s workers’ compensation claim as compensable.”  Accordingly, we
hold that this completed form may be construed as an agreement that death benefits
were due to Torres and, accordingly, the trial court had subject matter
jurisdiction to hear her case.  See Tex. Mut. Ins. Co., 2011 Tex. LEXIS
600, at *15; In re Tex. Mut. Ins. Co., 321 S.W.3d at 664; see also
In re Tex. Mut. Ins. Co., No. 03-10-00404-CV, 2011 Tex. App. LEXIS 6108,
at *13 (Tex. App.—Austin Aug. 3, 2011, orig. proceeding).

IV.  Conclusion

Based on the foregoing, we conclude
that the trial court did not err in refusing to dismiss the underlying case for
lack of jurisdiction.  Accordingly, we deny the petition for writ of mandamus.

 

                                                                                                                                                                                                                                    _______________________________

GREGORY T. PERKES

                                                                        Justice

 

Delivered and filed the 

29th day of August 2011. 

 

 









[1] See Tex.
R. App. P. 52.8(d) (“When denying relief, the court may hand down an
opinion but is not required to do so.”); Tex.
R. App. P. 47.4 (distinguishing opinions and memorandum opinions).

 





[2]
New Hampshire Insurance Company was the workers’ compensation insurance carrier
for Lazaro Torres’s employer, Willbros Construction (U.S.), L.L.C., at the time
of death.  Chartis Claims, Inc. was the claims administrator for New Hampshire
Insurance Company which oversaw the administration of the claim for benefits
arising from Lazaro Torres’s death.  Stephanie Stark was the claims adjuster
with Chartis who handled the workers’ compensation claim.  The relators will be
referred to collectively herein as “New Hampshire.”





[3]
On July 6, 2009, Willbros filed a petition in the Nebraska Workers’
Compensation Court against Torres to determine the liability of the parties
under Nebraska’s workers’ compensation laws.  On July 1, 2010, Willbros
dismissed its petition without prejudice.  New Hampshire contends the “result
of the dual proceedings was uncertainty about which state had jurisdiction over
the workers’ compensation claim.”





[4]
We note that the scope of our review in this original proceeding is limited to
the issues currently before the Court.  Accordingly, we express no opinion
herein regarding the effect, if any, of the Texas Supreme Court’s decision in Tex.
Mut. Ins. Co. v. Ruttiger, No. 08-0751, 2011 Tex. LEXIS 600, at *17 (Tex.
Aug. 26, 2011).