**In re TEXAS MUTUAL INSURANCE COMPANY, Relator.**

No. 14–10–00104–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 26, 2010.

Rehearing Overruled Oct. 7, 2010.

R. Scott Placek, Scott Arnold, Elizabeth Gene Myers, Kyle Mullins Jones, Round Rock, P.M. Schenkkan, Mary A. Keeney, Austin, for relator.

Michael P. Doyle, Jeffrey L. Raizner, Patrick Mason Dennis, Houston, for real party in interest.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

WILLIAM J. BOYCE, Justice.

Texas Mutual Insurance Company filed a petition for writ of mandamus in this court on February 5, 2010. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex.R.App. P. 52. Texas Mutual asks this court to compel the Honorable Robert E. May, presiding judge of the 149th District Court of Brazoria County, to set aside his January 11, 2010 order denying its plea to the jurisdiction based on a failure to exhaust administrative remedies before the Division of Workers' Compensation ("DWC").[1] We conditionally grant the writ.

### BACKGROUND

This case involves the interplay of two disputes in connection with a claim for workers' compensation benefits. One dispute focuses on the extent of the injury attributable to a compensable claim; the other focuses on the necessity of medical treatment requested for the injury. *See generally Zenith Ins. Co. v. Ayala,* ——

S.W.3d —— (Tex.2010) (per curiam) (explaining differences among disputes regarding compensability, extent of injury, and medical necessity).

Real party in interest Adrian Harding was involved in an accident on November 30, 2006, while driving a tractor trailer as an employee of AG Schultz, Sr. & Sons, Inc. Harding suffered injuries to his neck, lower back, and right elbow. Texas Mutual accepted Harding's claim of a compensable injury and began paying temporary income benefits to Harding. Texas Mutual also paid all submitted medical bills.

The dispute over the extent of Harding's injury began in 2007. Harding underwent an MRI scan in January 2007, which revealed (1) degenerative disc disease at multiple cervical levels; and (2) small osteophytes encroaching into the spinal canal causing spinal stenosis at C5–6 and C6–7. Donna Washington, the adjuster assigned to Harding's claim, filed a dispute on January 26, 2007, challenging the extent of Harding's injury. Texas Mutual contended that Harding's injury from the November 30, 2006 accident was limited to a lumbar strain, cervical strain, left shoulder strain, and right elbow strain, and did not include degenerative conditions identified on the MRI. Texas Mutual continued to pay all medical and income benefits due to Harding during the pendency of the dispute.

On February 9, 2007, Harding's surgeon, Dr. James Bonnen, noted in his file: "Apparently the patient's workers compensation carrier is denying this is a compensable injury.... This issue will have to be resolved before we can proceed with further treatment." Dr. Bonnen signed a letter on April 4, 2007, stating his opinion that the November 2006 accident exacer-

1. The Texas Department of Insurance, Division of Workers' Compensation is responsible for administering and operating the workers' compensation system in this state. Tex. Lab. Code Ann. § 402.001 (Vernon 2006).

bated Harding's pre-existing degenerative conditions.

On May 23, 2007, Washington made notations in Texas Mutual's electronic claims notes system reversing the decision to challenge the extent of Harding's injury.[2] Harding contends that Texas Mutual never informed him of Washington's internal reversal regarding the extent of his injury. Texas Mutual continued to contest the extent of Harding's injury through administrative channels.

Dr. J.M. Lyon, who was selected by the DWC, examined Harding on September 6, 2007, and opined that Harding's injury from the November 6, 2006 accident extended to degenerative conditions in Harding's spine. Texas Mutual then filed a "DWC Form–22" requesting a post-designated doctor examination of Harding by Dr. Martin Steiner. He examined Harding on October 9, 2007, and opined that the compensable injury extended to the diagnosis of lumbar strain, cervical strain, left shoulder strain, and right elbow contusion; Dr. Steiner also concluded that Harding's cervical spondylosis was an ordinary disease of life that "was not enhanced, accelerated or worsened" by his work-related injury.

Harding requested a contested case hearing to resolve the dispute over the extent of his injury, which the DWC conducted on December 5, 2007. *See* Tex. Lab.Code Ann. §§ 410.151–.169 (Vernon 2006). The DWC issued its ruling on February 26, 2008. The DWC concluded that Dr. Lyon's opinion was not contrary to the preponderance of the evidence. The DWC also concluded that Texas Mutual could not rely on Dr. Steiner's report because the DWC had not approved the Form–22 before Dr. Steiner's October 9, 2007 examination of Harding.

Accordingly, the DWC concluded that Harding's injury from the November 2006 accident extended to and included cervical intervertebral disc displacement, cervical radiculitis, cervical spine stenosis and left trapezius myofascial pain syndrome. The DWC's February 2008 order directed Texas Mutual "to pay benefits in accordance with this decision, the Texas Workers' Compensation Act, and the Commissioner's Rules. Accrued but unpaid income benefits, if any, shall be paid in a lump sum together with interest as provided by law." The order made no findings regarding the necessity of any proposed medical treatments.

The DWC's February 2008 ruling concluded the dispute regarding the extent of Harding's injury from the November 2006 accident. The dispute regarding necessity of requested medical treatment for that

---

**2.** The following exchange took place at the hearing on the amended plea to the jurisdiction with regard to the reversal of the initial dispute of the extent of injury:

MR. DOYLE: Said reverse the denial on their official records; but, apparently, her managers thereafter continued to deny.
THE COURT: And then when was that?
MR. DOYLE: That was that contested case hearing issue I'm talking about. In other words, the denial that she officially on her records reversed was the January '07 denial. They went ahead and still pressed it—they being the managers—until it was fully resolved by the commission against the carrier in February '08.

THE COURT: When did that hit the light of day?
MS. MYERS: The denial?
MR. DOYLE: You mean the reversal?
THE COURT: Yeah.
MR. DOYLE: In discovery in this case.
THE COURT: But when?
MR. DOYLE: When did they give us—I think we had to do a Motion to Compel.
THE COURT: So, it was not disclosed?
MR. DOYLE: No. In other words, she documented on their records; but never revealed it. They went ahead and proceeded all the way through these administrative steps until they lost.

injury began two months later when Dr. Bonnen requested preauthorization on April 22, 2008, to perform an anterior cervical discectomy and fusion at levels C5–6 and C6–7.

It is undisputed that preauthorization is required for spinal surgery. Harding's employer administered its workers' compensation health care benefits through a certified workers' compensation health care network. *See* Tex. Ins.Code Ann. §§ 1305.001–552 (Vernon 2009 & Supp. 2009); Tex. Lab.Code Ann. § 408.031 (Vernon 2006). In this context, preauthorization is accomplished through a "utilization review" process. *See* Tex. Ins.Code. Ann. § 4201.002(13) (Vernon 2009 & Supp. 2009). The network's "utilization review agent" for Harding's claim was Coventry Workers' Comp Services, which retained Dr. William Abraham to review Dr. Bonnen's request to preauthorize a two-level fusion. *See id.* § 4201.002(14). Dr. Abraham denied the request on April 25, 2008, because he concluded that the proposed two-level fusion was not medically reasonable or necessary. Harding did not seek reconsideration of this denial. *See* Tex. Ins.Code. Ann. § 1305.354 (establishing procedures for reconsideration of adverse determination).

On July 11, 2008, Dr. Bonnen again requested preauthorization for a two-level fusion. Dr. Gregory Goldsmith, who was retained by Coventry Workers' Comp Services, denied preauthorization on July 14, 2008, because he concluded that a two-level fusion was not medically necessary. Harding did not seek reconsideration of this denial. *See id.*

Harding's attorney requested an independent review of the July 14, 2008 preauthorization denial on July 18, 2008. Coventry responded that it was "unable to process this request" because "[t]here must first be an appeal or reconsideration before requesting an Independent Review Organization (IRO). A request for reconsideration must be submitted within 30 days of the initial denial, unless the condition is life threatening." *See* Tex. Ins. Code Ann. § 1305.354(a)(2) (request for reconsideration must be made not later than 30th day after date of issuance of written notification of adverse determination).

Harding's new surgeon, Dr. Stephen Esses, requested preauthorization on September 17, 2008, for a more limited procedure—a fusion at level C5–6 only. Coventry retained Dr. Robert Waltrip to review this request; on September 22, 2008, he issued a preauthorization for the one-level fusion. Dr. Esses performed the one-level fusion on October 3, 2008.

Harding sued Washington and Texas Mutual on October 14, 2008, alleging that they failed to investigate his claim properly and wrongfully denied and delayed payments for necessary medical care and other benefits. Harding bases his claims on an asserted delay in his receipt of surgery while the compensability dispute was pending from January 2007 until February 2008. Harding contends that "because he didn't get any surgical treatment at all, now ... [he] can't go back to driving, he's going back to work but not doing that." Harding disclaims any intent to predicate his claims on the separate medical necessity dispute that lasted from April 2008 until September 2008. Harding's counsel told the trial court that he is "suing for the delay impact, the denial. ... We're not suing for nonpayment of any bill, period." Harding sought consequential damages for harm to his economic welfare from wrongful denial and delay of benefits; he also sought damages for mental anguish and physical suffering resulting from wrongful denial of benefits, and from the "continued impact on the medical evaluation, treatment, and final prognosis [of his injuries]."

On December 1, 2009, Texas Mutual filed its amended plea to the jurisdiction contending that (1) the DWC had exclusive jurisdiction over Harding's claims; and (2) the trial court lacked jurisdiction because Harding failed to exhaust his administrative remedies before the DWC. On January 11, 2010, the trial court signed an order denying Texas Mutual's amended plea to the jurisdiction. Texas Mutual now seeks review of that order via petition for writ of mandamus.

## STANDARD OF REVIEW

■ A writ of mandamus properly issues when the relator demonstrates that the trial court abused its discretion and there is no adequate remedy by appeal. *In re Gulf Exploration, LLC,* 289 S.W.3d 836, 842 (Tex.2009) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding) (per curiam); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.,* 244 S.W.3d 840, 845 (Tex.2008) (orig. proceeding). To prevent disruption of the orderly processes of government, mandamus review is available to remedy a trial court's erroneous denial of a plea to the jurisdiction for failure to exhaust administrative remedies in a dispute arising from a workers' compensation carrier's asserted bad faith handling of a claim. *In re Liberty Mut. Fire Ins. Co.,* 295 S.W.3d 327, 328 (Tex.2009) (orig. proceeding) (per curiam).

■ The trial court has jurisdiction to award damages only to the extent that relief is not dependent upon the direct or indirect adjudication of a matter within the DWC's exclusive jurisdiction. *Cunningham Lindsey Claims Mgmt., Inc. v. Snyder,* 291 S.W.3d 472, 477 (Tex.App.-Houston [14th Dist.] 2009, pet. filed). The determination of whether an agency has subject matter jurisdiction is treated as a question of law and reviewed de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex. 2002). If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust all administrative remedies before a trial court has subject matter jurisdiction. *O'Neal v. Ector County Indep. Sch. Dist.,* 251 S.W.3d 50, 51 (Tex.2008) (per curiam).

■ A plea to the jurisdiction challenging exhaustion of administrative remedies under the workers' compensation scheme can rest on the pleadings, or on evidence. *Stinson v. Ins. Co. of the State of Pa.,* 286 S.W.3d 77, 83 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (op. on reh'g). " 'When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case.' " *Id.* (quoting *Combined Specialty Ins. Co. v. Deese,* 266 S.W.3d 653, 657 (Tex.App.-Dallas 2008, no pet.)). "The reviewing court 'must look to the allegations in the pleadings, liberally construe them in the plaintiff's favor, and look to the pleader's intent.' " *Id.* (quoting *Kelly v. Am. Interstate Ins. Co.,* 14–07–00083–CV, 2008 WL 5085138, at *2 (Tex.App.-Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op.)). " 'If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to

amend.'" *Id.* (quoting *Kelly,* 2008 WL 5085138, at *2).

### ANALYSIS

### I. Failure to Exhaust Administrative Remedies

▓▓▓▓▓▓ The Workers' Compensation Act vests the DWC with exclusive jurisdiction to determine a claimant's entitlement to medical benefits. *In re Liberty Mutual Fire Ins. Co.,* 295 S.W.3d at 328. When an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Subaru,* 84 S.W.3d at 221. The exhaustion requirement ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court must address those issues. *Stinson,* 286 S.W.3d at 83 (citing *Essenburg v. Dallas County,* 988 S.W.2d 188, 189 (Tex.1998) (per curiam)). The requirement to exhaust administrative remedies applies to disputes regarding compensability and extent of injury, and to medical necessity disputes. *Snyder,* 291 S.W.3d at 477.

Texas Mutual contends the trial court lacked jurisdiction because Harding did not (1) seek reconsideration of the April 2008 and July 2008 denials of preauthorization requests for a two-level fusion; or (2) challenge those denials before the DWC.[3] Texas Mutual argues that absent a DWC determination with respect to the medical necessity of a two-level fusion, Harding's administrative remedies have not been exhausted.

Harding responds that he does not predicate his claims on the denials of his two preauthorization requests for a two-level fusion. Instead, he argues that his claims are predicated solely on a delay in treatment attributable to an unwarranted challenge to the extent of his injury that lasted from January 2007 until February 2008. Harding argues there are no remedies left to exhaust with respect to medical necessity because Texas Mutual subsequently approved his request for a one-level fusion in September 2008.

The Texas Supreme Court has considered "whether a compensation claimant can prosecute a lawsuit against a carrier to recover benefits and damages resulting from a denial of benefits without a prior determination by the Texas Workers' Compensation Commission that benefits are due her." *Am. Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 802 (Tex.1996). The *Fodge* court held that a claimant cannot recover damages for the carrier's breach of its duty of good faith in connection with payment of medical expenses if the claimant was not entitled to medical treatment. *Id.* at 804. The Texas Supreme Court explained:

> The court could not adjudicate her damages claim without determining her entitlement to medical treatment, a matter within the Commission's exclusive jurisdiction. Her claim for damages from denied medical treatment is made no more viable simply by restating it under the other legal theories she asserted—

---

3. The employee or physician first must request reconsideration of the decision denying preauthorization. *See* Tex. Ins.Code Ann. § 1305.354 (providing procedures for reconsideration of adverse determination); § 4201.351 ("[A] a complaint filed concerning dissatisfaction or disagreement with an adverse determination constitutes an appeal of that adverse determination."). The reconsideration must be performed by a provider oth-

er than the provider who made the original adverse determination. *Id.* § 1305.354(a)(1). If the request for reconsideration is denied, then the employee or his physician may seek review of that denial by an independent review organization. *Id.* § 1305.355(a)(1). The request for independent review must be filed not later than the 45th day after the date of the denial of reconsideration. *Id.* § 1305.355(b).

negligence, fraud, and statutory violations. To award damages equal to the cost of denied medical care is tantamount to ordering that the care be paid for and would, as we said in *Saenz*, circumvent the Commission's exclusive authority to decide that issue. The same is true for Fodge's other claims for damages based on a denial of benefits. *Id.* (citing *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 612 (Tex. 1996)).

Harding concedes that a claimant who has not obtained a DWC ruling entitling him to benefits must exhaust administrative remedies under *Fodge* before pursuing an action for benefits or bad faith damages. However, Harding asserts that there is no jurisdictional impediment to his lawsuit because (1) he exhausted his administrative remedies before the DWC in February 2008 with respect to the extent of his injury; and (2) there are no further administrative remedies to be exhausted with respect to the medical necessity of spinal surgery that was authorized in September 2008 and performed in October 2008.

The DWC's February 2008 ruling on extent of injury did not automatically entitle Harding to a two-level or a one-level fusion. While the DWC determined in February 2008 that Harding's injury extended to degenerative conditions in his spine, it did not decide whether a two-level fusion, a one-level fusion, or any other specific treatment was necessary to treat Harding's injury. The DWC could make no such determination in February 2008 because preauthorization for surgery was not requested until April 2008. We disagree with any suggestion that the DWC's February 2008 extent-of-injury determination also determined the medical necessity of spinal surgery.

■ Disputes regarding extent of injury and medical necessity involve separate procedures. Under DWC rules, "a 'carrier shall approve or deny requests [for preauthorization] based solely upon medical necessity of the health care required to treat the injury, regardless of: (1) unresolved issue of compensability, extent of or relatedness to the compensable injury; (2) the carrier's liability for the injury; or (3) the fact that the employee has reached maximum medical improvement.'" *Zenith Ins. Co.*, —— S.W.3d at —— (quoting 28 Tex. Admin. Code § 134.600(h)). Upon receipt of the bill for preauthorized treatment, the carrier may still argue that the condition treated is not related to the compensable injury. *Id.* (citing 28 Tex. Admin. Code § 134.600(d)). The DWC explains:

"Preauthorization decisions are to be made entirely based upon medical necessity of the treatment of the condition proposed to be treated. Issues associated with extent of injury, compensability of the injury, or liability for the claim are separate from the issue of whether a given treatment or service is medically necessary. That is why approval of a preauthorization request does not make a carrier liable for payment if the carrier successfully challenges the extent of injury/compensability/liability issue."

*Id.* at —— (quoting 25 Tex. Reg. at 2101). The carrier's preauthorization does not preclude it from disputing extent of injury because a determination of medical necessity does not address extent of injury. *Id.* It follows that a determination regarding extent of injury does not address the medical necessity of a particular course of treatment for that injury. *See id.*

■ The exhaustion requirement applies to disputes regarding extent of injury and medical necessity. *See Stinson*, 286 S.W.3d at 84–85; *Snyder*, 291 S.W.3d at 477. Even when the claimant has exhausted his administrative remedies applicable to extent of injury, dismissal for lack of

jurisdiction may be warranted if the claimant failed to exhaust his remedies with regard to medical necessity. *Snyder*, 291 S.W.3d at 477–78.

The analysis here does not depend upon whether the claim at issue is predicated on an alleged denial of benefits as in *Fodge*, 63 S.W.3d at 804, or on an alleged delay in receipt of benefits. Administrative remedies still must be exhausted. *See Pickett v. Tex. Mut. Ins. Co.*, 239 S.W.3d 826, 836 (Tex.App.-Austin 2007, no pet.) (claims based on alleged delays in payment or preauthorization of medical benefits are not exempt from exhaustion of administrative remedies); *Malish v. Pac. Employers Ins. Co.*, 106 S.W.3d 744, 746–47 (Tex. App.-Fort Worth 2003, no pet.) (court lacked jurisdiction over claims based on carrier's delay in reimbursing expenses or preauthorizing medical care other than care ordered by agency).

The circumstances here parallel *Snyder*, which holds that administrative remedies must be exhausted both as to (1) compensability and extent of injury; and (2) medical necessity. 291 S.W.3d at 477–78. "Although Snyder characterizes his injuries as the result of a wrongful compensability dispute for which he has exhausted his administrative remedies, his claims are dependent on the determination that he was entitled to preauthorization of the surgery in December 2002." *Id.* at 478. The *Snyder* court reversed a judgment on appeal for the plaintiff and rendered a take-nothing judgment because the plaintiff did not exhaust administrative remedies by seeking reconsideration of the carrier's initial adverse medical necessity decision regarding neck surgery in December 2002, even though he did exhaust administrative remedies as to a separate compensability and extent-of-injury dispute. *Id.* at 479.

This case is distinguishable from *Stinson*, in which the court reversed a dismissal for lack of jurisdiction because a fact issue existed as to whether the claimant had requested preauthorization for physical therapy while the carrier was challenging extent of injury. 286 S.W.3d at 88–89. The *Stinson* court assumed but did not decide that a preauthorization request was required. *Id.* Assuming that preauthorization was required, and concluding that the evidence raised a fact question regarding the existence of a preauthorization request in light of the governing standard of review, the *Stinson* court held that dismissal was not warranted because the carrier had not followed the necessary administrative steps in responding to the request for preauthorization. *Id.* at 89. Unlike *Stinson*, there is no evidence of and no fact issue here regarding any preauthorization request during the period of alleged delay between January 2007 and February 2008.

Harding argues that he was not required to exhaust administrative remedies regarding medical necessity because Texas Mutual subsequently approved the one-level fusion. But Texas Mutual's September 2008 approval of a one-level fusion does not address the medical necessity of a one-level fusion, a two-level fusion, or any other treatment for which preauthorization was required during the period of alleged delay while extent of injury was being disputed between January 2007 and February 2008. *See Snyder*, 291 S.W.3d at 479 ("The absence of a dispute regarding the second preauthorization request does not alter the fact that ... resolution of any question regarding the need for surgery in December 2002 rested exclusively with the TWCC."). Harding cannot seek damages for an asserted delay in receipt of treatment between January 2007 and February 2008 without a determination that he was entitled to such treatment at that time; that determination is lacking because the DWC has not determined that the allegedly delayed treatment was medically necessary between January 2007 and February

2008. *See Fodge,* 63 S.W.3d at 804; *Snyder,* 291 S.W.3d at 479.

 In some circumstances involving parallel compensability and medical necessity disputes, entitlement to benefits can be shown by agreement between the carrier and the claimant. *See Tex. Mut. Ins. Co. v. Ruttiger,* 265 S.W.3d 651, 658 (Tex. App.-Houston [1st Dist.] 2008, pet. granted). Here, Harding cannot show delay of receipt of a one-level or a two-level fusion to which he was entitled between January 2007 and February 2008 because he did not request preauthorization for a one-level or a two-level fusion during that period. *See Snyder,* 291 S.W.3d at 484. Texas Mutual did not agree to a fusion at any level between January 2007 and February 2008. Texas Mutual's subsequent approval of a one-level fusion in September 2008 did not establish that a one-level or a two-level fusion was medically necessary between January 2007 and February 2008. *See Snyder,* 291 S.W.3d at 479; *see also Pickett,* 239 S.W.3d at 831 (existence of benefit dispute agreement addressing causal connection between psychological disorders and compensable back injury did not obviate need to exhaust administrative remedies regarding necessity of specific medical treatments for psychological disorders).

Requiring exhaustion of administrative remedies allows the DWC to resolve disputed fact issues within its exclusive jurisdiction. *See Essenburg,* 988 S.W.2d at 189 ("[T]he Legislature in conferring jurisdiction upon an agency expresses its will to have the agency resolve disputed issues of fact and policy.... [T]he exhaustion re-

quirement seeks to assure that the appropriate body adjudicates the dispute—the hallmark of a jurisdictional statute."). Harding wants to ask the fact finder at trial to determine that spinal surgery was medically necessary between January 2007 and 2008. This is an agency determination. *See Fodge,* 63 S.W.3d at 804; *Snyder,* 291 S.W.3d at 479.

 Nothing prevented Harding from seeking preauthorization for a one-level or a two-level fusion between January 2007 and February 2008. Preauthorization, compensability, and extent of injury are separate inquiries. *See Zenith Ins. Co.,* —— S.W.3d at —— – ——. Nothing relieved Harding of the obligation to establish the medical necessity of surgery between January 2007 and February 2008 as a prerequisite to claiming that a delay between January 2007 and February 2008 foreclosed his receipt of necessary surgery. *See In re Liberty Mut. Fire Ins. Co.,* 295 S.W.3d at 329 ("Nickelson did not seek preauthorization when it was required.... A party does not exhaust administrative procedures by ignoring the applicable rules.").[4]

Harding's entitlement to a one-level or a two-level fusion between January 2007 and February 2008 has not been determined by the DWC and has not been resolved by agreement. This issue remains unresolved. Therefore, the fact finder impermissibly would be asked to make an initial determination as to whether surgery was required between January 2007 and February 2008; that determination lies within the DWC's exclusive jurisdiction. *See*

---

**4.** Under a provision of the Texas Administration Code that was in effect until December 31, 2006, if the insurance carrier raised a compensability dispute, resolution of the request for review by an independent review organization would be abated until the resolution of the compensability dispute. *Stinson,* 286 S.W.3d at 86 (citing former 28 Tex. Ad-

min. Code § 133.308(f)(7)). That provision is not applicable in this case. Similarly, Harding cannot rely upon Section 413.014(f) of the Labor Code to argue that no preauthorization request was required. Section 413.014(f) does not apply to Harding's "in network" claim. *See* Tex. Ins.Code § 1305.351(c).

*Fodge,* 63 S.W.3d at 804; *Snyder,* 291 S.W.3d at 479. Because Harding did not exhaust his administrative remedies, the trial court abused its discretion when it denied Texas Mutual's plea to the jurisdiction. *See Liberty Mut. Fire Ins. Co.,* 295 S.W.3d at 329.

## II. Impediment to Jurisdiction

 We must determine whether Harding's suit should be dismissed in its entirety as Texas Mutual asserts. If a claim is not within the court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. *Id.* at 805. If the impediment to jurisdiction can be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured. *Id.* Here, the jurisdictional impediment cannot be removed. *See Snyder,* 291 S.W.3d at 484.

### CONCLUSION

Because Harding failed to exhaust his administrative remedies before the DWC, the trial court abused its discretion by denying Texas Mutual's plea to the jurisdiction. Accordingly, we conditionally grant Texas Mutual's petition for writ of mandamus and direct the trial court to set aside its January 11, 2010 order, and enter an order granting the plea to the jurisdiction and dismissing the case. The writ will issue only if the trial court fails to act in accordance with this opinion.