# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2013

No. 12-40192

Lyle W. Cayce
Clerk

GUADALUPE CALDERA,

Plaintiff-Appellant,

v.

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, GARZA, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case involves the interplay between the Medicare Secondary Payer Statute ("MSP"), 42 U.S.C. § 1395y(b), and Texas workers' compensation law.[1] We must decide whether the MSP preempts a state law that requires a workers' compensation claimant to obtain preauthorization from the relevant carrier before incurring certain medical expenses. *See* Tex. Lab. Code Ann. § 413.014(c), (d); 28 Tex. Admin. Code § 134.600. Because we hold that it does not, we AFFIRM the district court's judgment.

---

[1] Texas statutes use the term "workers' compensation", whereas the MSP refers to "workmen's compensation." *Compare, e.g.*, Tex. Lab. Code Ann. § 408.001 *with* 42 U.S.C. § 1395y(b)(2)(A). Unless quoting the MSP, we refer to this body of law in accordance with the Texas terminology.

No. 12-40192

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Guadalupe Caldera injured his back at work in 1995. Workers' compensation carrier Insurance Company of the State of Pennsylvania ("ICSP") initially paid Caldera workers' compensation benefits pursuant to Texas state law. Still suffering from the injury, Caldera applied for and obtained Medicare benefits in 1998.[2]

Caldera's back injury ultimately resulted in two surgeries: one in 2005 and another in 2006. Medicare paid for both procedures, with costs totaling $42,637.41. Although Caldera did not seek preauthorization for either surgery from ICSP (a prerequisite for payment under Texas workers' compensation law[3]), he filed a claim with ICSP for these expenses, arguing that ICSP—not Medicare—was responsible for payment.

Caldera and ICSP engaged in an "extent-of-injury" dispute regarding the surgeries. ICSP initially denied Caldera's request for benefits on the ground that the conditions that gave rise to the surgeries were not causally related to Caldera's workplace injury. Caldera appealed ICSP's decision in accordance with the administrative process that governs extent-of-injury disputes under Texas workers' compensation law and lost in a series of proceedings before the Texas Department of Insurance, Division of Workers' Compensation (the "DWC"). Having exhausted his administrative remedies with respect to the extent-of-injury dispute, Caldera sought judicial review in state court. The parties settled the question in Caldera's favor with an Agreed Judgment. The

---

[2] ICSP later terminated Caldera's lifetime medical benefits on the ground that the covered injury was resolved and any new medical issues were unrelated. Caldera did not appeal ICSP's determination and continued to receive Medicare benefits.

[3] A workers' compensation carrier is "not liable" for services and treatments that require preauthorization "unless preauthorization is sought by the claimant . . . and either obtained from the insurance carrier or ordered by the commissioner." Tex. Lab. Code Ann. § 413.014(d); *see also* Tex. Lab. Code Ann. § 413.014(c); 28 Tex. Admin. Code § 134.600 (requiring preauthorization for spinal surgeries).

No. 12-40192

Agreed Judgment established that Caldera's 1995 injury was the producing cause of the conditions that gave rise to his surgeries, but it did not liquidate any damages or require any payment.

Caldera also filed an MSP reimbursement claim against ICSP in the state-court action, seeking double-damages.[4]  ICSP answered that Caldera could not recover under the MSP because—regardless of the extent-of-injury issue—ICSP had no obligation to pay for surgeries that were not preauthorized in accordance with Texas workers' compensation law.[5]  Caldera filed this declaratory judgment action to determine whether the MSP preempts ICSP's state-law defense.

ICSP moved to dismiss Caldera's declaratory judgment suit pursuant to Federal Rule of Civil Procedure 12(b)(1) for want of subject-matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 12(b)(7) for failure to join a necessary party.  Addressing only ICSP's motion under Rule 12(b)(1), the district court dismissed Caldera's claim for failure to exhaust administrative remedies.  Caldera filed a motion for new trial, which the district court dismissed in a one-page order.  Caldera timely appealed.

## II. ANALYSIS

A federal cost-saving statute, the MSP makes the government a secondary payer when a Medicare recipient has another source of primary insurance coverage.  *See*  42 U.S.C. § 1395y(b); *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003) (*en banc*) (citing *Blue Cross & Blue Shield of Tex. v. Shalala*, 995 F.2d 70, 73 (5th Cir. 1993); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 174 F. Supp. 2d 1242, 1250 (N.D. Ala. 2001)).  In other words, "Medicare serves

---

[4] On the record before us, it appears that Caldera has suffered no out-of-pocket loss for the costs at issue.  And as far as we can tell, Medicare has taken no steps to recover these funds from ICSP or Caldera.

[5] The parties agreed to sever Caldera's extent-of-injury appeal and his MSP claim.  The MSP claim is pending before the 105th Judicial District Court of Nueces County, Texas, but is abated pending the outcome of this declaratory judgment.

No. 12-40192

as a back-up insurance plan to cover that which is not paid for by a primary insurance plan." *Goetzmann*, 337 F.3d at 496. To support that function, the MSP contains a private right of action to incentivize citizens to aid the government in recovering funds erroneously paid by Medicare. *See* 42 U.S.C. § 1395y(b)(3)(A). A Medicare beneficiary may recover from his workers' compensation carrier twice the amount that Medicare paid on his behalf *if*, among other things, the carrier qualifies as a "primary plan"—that is, if it "can reasonably be expected" to cover the expense "under a workmen's compensation law or plan." *Id.* § 1395y(b)(2)(A). To succeed, then, Caldera must state a plausible claim that ICSP "can reasonably be expected" to pay for his surgeries under Texas workers' compensation law.

Caldera admits that he failed to obtain preauthorization for his surgeries, a state-law prerequisite for the receipt of workers' compensation benefits from ICSP. Nevertheless, Caldera argues that ICSP qualifies as a "primary plan" that "can reasonably be expected" to pay because the MSP preempts the Texas preauthorization requirement. Caldera asserts two preemption arguments, one broad and one narrow, both unavailing. We address them in turn.

**A.**

First, Caldera broadly argues that the MSP preempts *any* state laws that "impede the intent of recouping monies from primary payers" like ICSP. Caldera relies extensively on a federal implementing regulation, which provides that "Medicare benefits are secondary to benefits payable by a primary payer *even if State law or the primary payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries*." 42 C.F.R. § 411.32(a)(1) (emphasis added).

Caldera is right that Congress explicitly prohibited workers' compensation and other insurers from subordinating their payment obligations to those of Medicare. As we explained:

4

No. 12-40192

> Before 1980, if a Medicare beneficiary had an alternate source of payment, such as private insurance or an employee group health plan, Medicare was the primary payer, and the health plan was the secondary payer, liable only for the costs that remained after Medicare made its payments. Private insurers even wrote this practice into their health insurance contracts. Congress enacted the MSP statute to reverse the order of payment in cases where Medicare beneficiaries have an alternate source of payment for health care.

*Blue Cross & Blue Shield*, 995 F.2d at 73 (internal citations omitted). Thus, under the MSP neither state law nor a private insurance contract may, for example, reduce an insured's payments by the amount of his eligibility for Medicare benefits.[6]

The MSP and its implementing regulations do not, however, extend so far as to eviscerate all state-law limitations on payment, as Caldera suggests. To the contrary, the plain language of the MSP illustrates its harmonious relationship with state workers' compensation law: a workers' compensation carrier is "primary" only if "payment has been made or can reasonably be expected to be made *under a workmen's compensation law or plan of the United States or a State*." 42 U.S.C. § 1395y(b)(2)(A)(ii) (emphasis added). Indeed, numerous MSP regulations (indeed, an entire subchapter) presuppose the application of state workers' compensation laws. 42 C.F.R. § 411.40–.47. For

---

[6] Courts across the country have reached this conclusion. *See, e.g.*, *Varacalli v. State Farm Mut. Auto. Ins. Co.*, 763 F. Supp. 205, 207 (E.D. Mich. 1990) (holding that the MSP preempted a state law that required insurers to offer "coordination of benefits at reduced premiums" when the insured had other health and accident coverage, making Medicare the primary payer in direct conflict with the MSP); *Abrams v. Heckler*, 582 F. Supp. 1155, 1165 (S.D.N.Y. 1984) (holding that Congress intended to override a state statute that expressly prohibited the payment of no-fault benefits for Medicare-covered services); *see also Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 279, 286 (6th Cir. 2011), *cert. dismissed*, 132 S. Ct. 1087 (2012) (concluding that "a primary plan is liable under the private cause of action when it discriminates against planholders *on the basis of their Medicare eligibility* and therefore causes Medicare to step in and (temporarily) foot the bill" (emphasis added)).

example, ICSP cites 42 C.F.R. § 411.43(a), which makes a beneficiary responsible "for taking whatever action is necessary to obtain any payment that can reasonably be expected under workers' compensation." To that end, Medicare generally "does not pay until the beneficiary has exhausted his or her remedies under workers' compensation." *Id.* § 411.43(b). Similarly:

> If Medicare makes a conditional payment with respect to services for which the beneficiary or provider or supplier has not filed a proper claim with a primary payer, and Medicare is unable to recover from the primary payer, Medicare may recover from the beneficiary or provider or supplier that was responsible for the failure to file a proper claim.

*Id.* § 411.24(*l*). A "proper claim" is "a claim that is filed timely and meets all other claim filing requirements specified by the plan, program, or insurer." *Id.* § 411.21. Far from preempting the state-law workers' compensation regime, then, the regulations accept that Medicare may be unable to recover from a carrier because a beneficiary failed to file a proper claim under state law.

Our decisions in *Waters* and *Blue Cross and Blue Shield* reinforce this conclusion. *Cf. Waters v. Farmers Tex. Cnty. Mut. Ins. Co.*, 9 F.3d 397, 398–401 (5th Cir. 1993) (holding that when state law or the terms of a primary plan limit an individual's right to payment, the government's reimbursement is "equally limited": "No matter what theory is pursued—statutory right or subrogation—the government stands *exactly* in [the Medicare beneficiary's] shoes when recovering from the available insurance funds." (emphasis added)); *Blue Cross & Blue Shield*, 995 F.2d at 73 (summarizing the context surrounding the enactment of the MSP: "the MSP statute has never created or extended coverage; it has only dictated the order of payment when Medicare beneficiaries already have alternate sources of payment for health care."). Moreover, other courts across the country have similarly held that an MSP claimant may not recover amounts from a purported "primary plan" in excess of a carrier's

No. 12-40192

responsibility under state law or the relevant contract. *See, e.g.*, *Bradley v. Sebelius*, 621 F.3d 1330, 1337 (11th Cir. 2010); *Estate of Foster v. Shalala*, 926 F. Supp. 850, 864–65 (N.D. Ia. 1996).

In sum, we conclude that Congress intended the MSP to complement, not supplant, state workers' compensation rules. This includes the preauthorization requirement that Caldera failed to meet before he filed suit. For that reason, Caldera's first argument fails.

## B.

Second, Caldera makes the narrower argument that Medicare's conditional payment for his surgeries—which equates to a determination that his surgeries were medically necessary[7]—renders the state-law preauthorization requirement "moot" because preauthorization likewise depends on a showing of medical necessity[8]. In Caldera's view, Medicare's conclusion that Caldera's surgeries were medically necessary preempts any independent consideration of medical necessity by ICSP or, on administrative appeal, the DWC. Because he has fulfilled the other state-law requirements for recovery (*i.e.*, he has obtained an Agreed Judgment regarding compensability), Caldera says ICSP must pay.[9]

---

[7] *See* 42 U.S.C. § 1395y(a)(1)(A) (proscribing payment under Medicare Part A or Part B unless items or services are "reasonable and necessary").

[8] 25 Tex. Reg. § 2101 (2000) ("Preauthorization decisions are to be made entirely based upon medical necessity of the treatment of the condition proposed to be treated."); *see In re Tex. Mut. Ins. Co.*, 321 S.W.3d 655, 662 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (citing *Zenith Ins. Co. v. Ayala*, 325 S.W.3d 176, 178 (Tex. 2010)).

[9] Caldera also argues that the state court Agreed Judgment demonstrates ICSP's liability pursuant to section 1395y(b)(2)(B)(ii) of the MSP, regardless of whether he obtained preauthorization. That provision states that a "primary plan's responsibility for such payment may be demonstrated by a judgment . . . or by other means. . . ." *Id.* § 1395y(b)(2)(B)(ii). But the Agreed Judgment does not establish ICSP's responsibility *to pay*. It relates only to the extent of Caldera's injury. As the district court noted: "While ICSP has agreed that Caldera's injury is compensable, it has not agreed to pay any damages (medical or otherwise) as a result. . . . Its liability for payment of medical expenses (specified or generalized) has not been conceded in settlement but must be determined by workers compensation law and the terms of coverage, which include the preauthorization requirement

No. 12-40192

In support of this argument, Caldera poses a hypothetical: if he had requested preauthorization pursuant to Texas workers' compensation law, then ICSP could have decided that the surgeries were not medically necessary, while Medicare reached the opposite conclusion. According to Caldera, "federal preemption would break that tie in favor of Medicare's determination that the [surgeries were] necessary to assist an eligible beneficiary." Caldera warns that to allow Medicare and the DWC to reach inconsistent conclusions "invites chaos" and "would lead to a diverse and inconsistent application of the MSP where Medicare has made conditional payments."

This purported "conflict," however, does not arise out of the text of the relevant federal and state statutes or regulations. Rather, it is a function of two entities engaging in a similar individualized analysis at the same time—a common reality in a world of overlapping state, federal, and private action. Similar as it may be, Medicare's medical necessity determination is subject to statutory provisions, regulatory standards, internal guidance, and precedent distinct from that which governs a preauthorization analysis under Texas workers' compensation law. As a general matter, the MSP leaves those distinctions intact. *See* 42 C.F.R. § 411.40–.47. To impose Medicare's individualized medical necessity determination on a state workers' compensation plan is to unravel this delicate balance.

Moreover, the "conflict" Caldera urges does not exist in this case. The DWC and Medicare did not—indeed could not—reach opposite conclusions regarding the medical necessity of Caldera's surgeries. Because Caldera opted not to seek preauthorization, the DWC never had the chance to evaluate the

and the timely submission of medical bills."

8

medical necessity of his procedures.[10]    We decline to reach a preemption conclusion on the basis of a hypothetical conflict.

### III. CONCLUSION

Congress enacted the MSP to reduce Medicare costs by making Medicare a secondary payer of insurance benefits.  It did not, however, intend to override a primary payer's ability to impose medical necessity requirements in accordance with state law.  Texas has gone to great lengths to craft a statutory structure that "carefully constructs rights, remedies, and procedures" to provide adequate coverage for injured workers.  *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 440–41 (Tex. 2012) (citing *City of Waco v. Lopez*, 259 S.W.3d 147, 155-56 (Tex. 2008).  That structure "contains detailed procedures and penalties for failures of the various interested parties to comply with statutory and regulatory requirements."  *Id.* at 440.  We will not upset this well-oiled machine absent a clear directive from Congress.

Under the MSP, if a claimant fails to file a proper claim in accordance with state-law requirements and, therefore, cannot recover benefits from the primary payer, so be it.  Medicare can refuse to make a conditional payment, or it can seek reimbursement from the claimant himself.  In any event, the

---

[10] As the Supreme Court has unanimously agreed, "[i]n most cases, [an] issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court."  *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (O'Connor, J., concurring in part and concurring in the judgment) ("On this underlying principle of administrative law, the Court is unanimous.") (citing the majority and the dissent); *see United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952) ("[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

No. 12-40192

claimant cannot succeed under the MSP. Because that is Caldera's situation here, he fails to state a claim under Rule 12(b)(6).[11]  We AFFIRM.

---

[11]  We note that the district court dismissed Caldera's claim for lack of subject-matter jurisdiction under Rule 12(b)(1) based on Caldera's failure to exhaust state-law remedies. But an exhaustion requirement is jurisdictional in nature only if Congress "statutorily mandates that a claimant exhaust administrative remedies." *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (citations omitted); *see Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 686 n.5 (5th Cir. 2006). Congress has not done so here. The MSP is silent with respect to state-law exhaustion requirements. *See* 42 U.S.C. § 1395y(b).

Considering the Supreme Court's recent reminders that courts be precise in their use of the term jurisdiction, we hold that dismissal under 12(b)(1) was not appropriate in this case. *See, e.g.*, *Union Pac. R. Co. v. Bd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998)) ("Recognizing that the word 'jurisdiction' has been used by courts, including this Court, to convey 'many, too many, meanings,' we have cautioned, in recent decisions, against profligate use of the term." (internal citation omitted)). Nevertheless, we may affirm under 12(b)(6) if Caldera's failure to comply with a state-law exhaustion requirement results in a failure to state a claim. *See, e.g.*, *Premiere*, 440 F.3d at 686 n.5 (affirming the district court's Rule 12(b)(1) dismissal of the plaintiff's federal claims even though "it would have been more accurate for the [district] court to have framed its dismissal in terms of Premiere's *failure to state a claim*, and not in terms of the court *lacking jurisdiction*"); *see also Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 594–95 (5th Cir. 2007); *Taylor*, 127 F.3d at 476. Because Caldera fails to state a claim under the well-established standard governing Rule 12(b)(6) for the reasons stated *supra*, we affirm.